YARRUT, Judge.
This is a suit for compensation under the Workmen’s Compensation Law, plus penalties and attorney’s fees for arbitrarily refusing payment.
Plaintiff appeals from a judgment awarding him only twenty-one weeks compensation at $35 per week, plus interest on unpaid installments, together with $100 as medical expenses, and costs of court, but no allowance for attorney’s fees. Plaintiff contends he is entitled to 400 weeks disability, plus $750 doctor’s fees, and 20% attorney’s fees.
*289 Defendant answered the appeal asking for complete reversal of the judgment, contending Plaintiff suffered no compensable injury during the course of his employment and, alternatively, that it was entitled to credit for wages earned from the date of injury until Plaintiff left its employ.
The case presents a question of fact only: (1) Whether Plaintiff was injured during his employment, and (2) whether his present disability resulted from his alleged injury.
The date of the alleged injury was December 2, 19S9, while Plaintiff was employed as a freight handler and earned wages that would entitle him to the maximum of $35 per week during disability.
There is conflict in the testimony concerning whether Plaintiff was injured; whether he notified his foreman on the date alleged or only a month later. We believe the evidence supports the trial court’s conclusion that he did suffer a temporary injury while at work as a freight handler. However, the nature and extent of his injury is the serious question.
A general practitioner, with surgical training but very little practical experience in the. orthopedic or neurological fields, was the first physician to see and treat Plaintiff. He saw Plaintiff when he presented himself at the I. C. Hospital on January 31, 1960, and continued treatment until his discharge therefrom on February 3, 1960. Thereafter, Plaintiff was again seen on May 13, 1960, after the commencement of the trial. The doctor’s diagnosis was that Plaintiff possibly had a ruptured disc at the L4-L5 level of the lumbar spine, entirely on his clinical examination of Plaintiff without the benefit of other diagnostic studies, such as a lumbar myelogram, or experimental conservative treatment. He did not examine the X-rays and freely admitted that, in this type of case, he would refer his patient to a neurosurgeon or orthopedist, in this instance to Dr. Dean Echols, a neurosurgeon, who was not called to testify, without any explanation therefor.
Another general practitioner (for Plaintiff) testified to the effect that he diagnosed Plaintiff’s complaint as a low back injury and right sciatica traumatic; but could not state positively regarding a herniated disc. His diagnosis was based solely on what the Plaintiff told him; did not examine any X-ray, nor perform clinical leg-raising tests in the supine and sitting positions; failed to measure for atrophy; did not conduct a sensory examination, nor read the reports of the neurosurgeons. He was surprised when told that Plaintiff had continued working after his injury.
Plaintiff did not seek further medical attention from February 3, 1960, to March 25, 1960, when he was sent to an industrial surgeon by Defendant. This surgeon treated Plaintiff and re-examined him periodically. He found that all objective tests were negative and inconsistent with a condition that could cause nerve root pressure of the lumbar spine.
Plaintiff was then referred to (1) a prominent neurosurgeon, whose specialty includes the diagnosis and treatment of herniated discs of the lumbar spine; (2) a radiologist; (3) an orthopedist; and (4) a urologist; who found between them a lip-ping of the vertebrae or hypertrophic os-teophytes, which can serve as a basis for arthritis and which changes of the spinal bodies are long-standing and are not associated with trauma; that there was a lack of causal connection between trauma and the presence of the osteophytes which could cause pain and discomfort in the back, but are not associated with trauma, especially where there is very little or no change in the lumbar spine over a span of thirteen months, such as in the instant case;, that Plaintiff complained of pain just above the sacro-coccygeal area; that Plaintiff had an infection in the urinary tract, which could account for pain in the sacro-coccygeal region ; that Plaintiff had a full range of motion in his back, with no list or tilting; no atrophy nor reflex or sensory changes in the lower extremities; that the straight leg-raising tests in the supine and sitting posi *290 tions were inconsistent which ruled out the presence of a ruptured disc.
From the combined testimony of the four medical experts for Defendant, we must agree with the district court that the Plaintiff’s present complaint of pain in the back, if any, is not the result of any trauma suffered during his employment, but the result of hypertrophic degenerative changes, unassociated with his employment.
Regarding the claim of $750 for medical fees of the general practitioner who first treated Plaintiff, this doctor testified he gave Plaintiff injections, physiotherapy, heat, massage, diathermy; saw him every day for a number of weeks, and then twice or three times a week, and then twice a . week; and then once a week for a number of weeks; and then about once a month since the first of January, 1961. He produced no records of the dates of treatment, nor did he state what he charged per treatment. Since Plaintiff was held to have been disabled only 21 weeks by the trial court, with which we agree, any treatment thereafter was necessarily for ailments not due to the injury, for which recovery cannot be had against the .employer.
The trial court allowed $100 for medical expenses, with no reason given therefor. However, the doctor first saw Plaintiff on March 28, 1960, notwithstanding he was allegedly injured on December 2, 1959. The disability ceased on April 30, 1960, the date he was able to return to work. Therefore, this doctor can only recover for treating Plaintiff from March 28, 1960 to April 30, 1960, about one month. A treatment every day for a number of weeks (say two), six days'a week, would be twelve treatments; and three days a week for the remaining two weeks would be six more treatments, or a total of 18 treatments. Whether the treatments were at the rate of $5 or $10 the doctor did not state. Hence, our guess can be no better than that of the trial court of $100.
Having continued in his regular employment for five weeks after his injury, compensation should have been for 16 instead of 21 weeks.
Regarding imposition of penalties and attorney’s fees, since the employer (alone made Defendant here) was insured, as disclosed clearly by the record, the employer is not liable for such penalties, etc., even if the non-payment of compensation were held to have been arbitrary and capricious. LSA-R.S. 22:658; LSA-R.S. 23:1201.2; Bassemier v. W. S. Young Construction Co., La.App., 110 So.2d 766.
For the reasons assigned, the judgment of the district court is amended, by reducing to sixteen the number of weeks allowance of compensation, and amended further to allow 20% of the award for Plaintiff’s attorney payable from the award. As amended, the judgment is affirmed.
Amended and affirmed.